**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GUY GORDON MARSH,**

　　　　　**Petitioner,**

**v.**　　　　　　　　　　　　　　　　**Civil Action No. 3:13-cv-15**
　　　　　　　　　　　　　　　　　　**Criminal Action No. 3:10-cr-76**
　　　　　　　　　　　　　　　　　　**(Judge Bailey)**


**UNITED STATES OF AMERICA,**

　　　　　**Respondent,**


## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On February 15, 2013, Guy Gordon Marsh ("Petitioner"), proceeding *pro se*, filed a

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody. Civil Action No. 3:13-cv-15, ECF No. 1; Criminal Action No. 3:10-cr-76, ECF No. 56.

On February 15, 2013, the Clerk of the Court mailed Petitioner a Notice of Deficient Pleading,

which informed him that he had twenty-one days to correct his Motion by filing it on the correct

form as per Local Rules of Prisoner Litigation Procedure 3.4. ECF No. 59.[1] Petitioner filed his

correct form ("Court-Approved Motion") on March 7, 2013. ECF No. 62. On March 12, 2013,

Magistrate Judge David J. Joel entered an Order directing the Government to respond to

Petitioner's motion. ECF No. 64. On April 8, 2013, the Government filed its response. ECF No.

67. On April 26, 2013, Petitioner filed an amended Motion to Vacate under 28 U.S.C. § 2255

("Amended Motion"). ECF No. 73. On June 19, 2013, the Government filed its response. ECF

No. 78. On August 5, 2013, Petitioner filed his Reply to the Government's Response ("Reply to

---

[1] From this point on, all ECF numbers refer to entries in Criminal Action No. 3:10-cr-76.

1

Response"). ECF No. 84. On July 7, 2014, Petitioner filed a Motion to Supplement his Motion to Vacate. ECF No. 108. On December 11, 2014, Petitioner's Motion was granted, and the Respondent was afforded twenty-one days to file a response to the supplement. ECF. No. 123. On December 15, 2014, the Government filed a Motion to Reconsider and a Motion to Dismiss. ECF No. 129.

The undersigned now issues this Report and Recommendation on Petitioner's motion to vacate without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II. FACTS

### A. *Conviction and Sentence*

On October 21, 2010, Attorney Paul G. Taylor was appointed to represent Petitioner. ECF No. 8. On November 16, 2010, a Grand Jury sitting in the Northern District of West Virginia returned an Indictment against Petitioner, charging him with one count of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). ECF No. 13.

On January 24, 2011, Petitioner signed a plea agreement by which he agreed to plead guilty to Count 1, failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). ECF No. 30. Petitioner also waived his right to appeal and to collaterally attack his sentence. Id. Specifically, Petitioner's plea agreement contained the following language regarding his waiver:

10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would

be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(ECF No. 30 at 3-4).

On January 24, 2011, Petitioner entered his plea in open court. Petitioner was 64 years old and completed two years of college. ECF No. 47 at 4. The Court specifically asked Petitioner if he understood the waiver of his appellate right and his "right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence." Id. at 11. Petitioner answered "yes, sir." Id. The Court asked Petitioner's counsel if he believed Petitioner understood the waiver of appellate and post-conviction rights, and Petitioner's counsel answered that he did believe Petitioner understood. Id. The Court then reviewed Count 1, failure to register as a sex offender, and asked Petitioner if he understood the charge. Id. at 13. Petitioner stated he understood. Id. at 14. The Court also reviewed all the rights Petitioner was giving up by pleading guilty and the sentencing implications. Id. The Court found that Petitioner understood the consequences of a guilty plea. Id. at 19.

Next, the Government presented the testimony of Deputy Michael Ulrich of the United States Marshals to establish a factual basis for the plea. Id. Deputy Ulrich presented the case, which was investigated by Deputy John LaLiberte of the United States Marshals. Id. After establishing the factual basis for the plea, Petitioner advised the Court that he was pleading guilty to Count 1 of the Indictment. Id. at 25. Petitioner further stated that no one attempted to threaten or force him to plead guilty, that he was pleading guilty of his own free will, and that the plea was not the result of any promises made to him, other than those in the plea agreement. Id. Petitioner testified that his counsel had adequately represented him and that he had done a

"good job." Id. at 26. Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty. Id.

At the conclusion of the hearing, the Court determined that the guilty plea was made freely and voluntarily, that Petitioner understood the consequences of the plea and that the elements of Count 1 were established beyond a reasonable doubt. Id. at 27. Petitioner did not object to the Court's finding.

On May 9, 2011, Petitioner appeared before the Court for sentencing. Petitioner's counsel raised two objections in regard to the presentence report. ECF No. 48 at 4. The first objection was with regard to which Tier level Petitioner would be sentenced. Id. The second objection pertained to Petitioner's attempt to register or correct the failure to register by contacting the West Virginia State Police prior to his arrest. Id. The Court overruled both objections based upon the discussion and evidence presented. Id. at 13. After considering several factors, including the circumstances of both the crime and the defendant, the Court sentenced Petitioner to a term of sixty (60) months imprisonment, thirty (30) years supervised release, and a special assessment of $100.00. Id. at 20. The Court waived a fine because Petitioner did not have the ability to pay. Id. at 26. The Court entered its Judgment on May 11, 2011. ECF No. 38.

### B.    Direct Appeal

Petitioner filed his "Notice of Appeal" on May 23, 2011. ECF No. 40. On June 15, 2011, Paul Taylor moved to be terminated as Petitioner's counsel on appeal. ECF No. 44. Brian Kornbrath, Federal Public Defender for the Northern District of West Virginia, was appointed by the Court to represent Petitioner. Id. Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) addressing the validity of the guilty plea and the reasonableness of the sentence, but concluding that there were no meritorious issues for appeal. ECF No. 50 at

2. Petitioner filed a *pro se* brief challenging the voluntary and knowing nature of the plea and asserting that the Government breached the plea agreement. Id.

The panel determined that Petitioner knowingly and voluntarily waived his right to appeal the sentence, and thus granted the Government's motion to dismiss Petitioner's appeal as to his sentence. Id. at 3. The Fourth Circuit also, pursuant to Anders, reviewed the plea colloquy and found that no meritorious issues existed. Id. Thus, the Fourth Circuit denied the Government's motion to dismiss the appeal from the conviction, and affirmed Petitioner's conviction. Id. Petitioner did not petition the United States Supreme Court for a writ of certiorari.

### C. Federal Habeas Corpus

**1. Petitioner's Motion**

In his Amended Motion, Petitioner raises the following twelve (12) claims in support of his Motion and his request that the Court vacate, set aside or correct his sentence:

1)  Counsel did not research or investigate Petitioner's underlying charge of General Sodomy in Maryland in conjunction with his instant charge of Failure to Register as a Sex Offender (18 U.S.C. §2250(a));

2)  Counsel failed to investigate Petitioner's non-compliance with the Sex Offender Registration and Notification Act ("S.O.R.N.A.") because Petitioner contacted law enforcement officials by telephone, indicating that he was homeless;

3)  Counsel failed to object to inaccuracies in the Pre-Sentence Report ("P.S.R.");

4)  Counsel failed to challenge the Indictment based on compliance with S.O.R.N.A.;

5)  Counsel provided poor advice to accept the plea agreement, which allowed the Court to determine Petitioner's Tier Offense level and categorized Petitioner as a sex offender;

6)  Counsel failed to challenge the Government's proof of knowledge;

7)  Counsel failed to argue against his classification as a Tier III offender at sentencing;

8) Counsel failed to argue that Petitioner did not "disappear" according to the Attorney General's "Interim Rule" and "Example 2;"

9) Counsel failed to challenge the validity of Maryland's Sex Offender Registration Law;

10) Counsel failed to request a pre-trial detention hearing;

11) Counsel failed to argue that Petitioner was a Pre-Act Sex Offender and exempt from prosecution for failure to register; and

12) Petitioner's conviction and sentence are invalid because S.O.R.N.A. does not apply to Pre-Act Offenders and the Attorney General's Interim Rule violates the Administrative Procedure Act (5 U.S.C. § 553(b)).

ECF No. 73 at 9-25

In Petitioner's Supplemental Motion to Vacate under 28 U.S.C. § 2255, Petitioner raises

the following claim:

1) Ineffective Assistance of Counsel for Counsel failing to object to the terms of the court's sentence; specifically for failing to object to the thirty years of supervised release and the "Additional Special Conditions."

ECF No. 108 at 1-2.

**2. Government's Response**

In addition to arguing that Petitioner's motion is foreclosed by the waiver,

Respondent asserts the following:

1) Defense counsel did not err in failing to challenge Petitioner's Maryland conviction and his obligations under S.O.R.N.A.;

2) Petitioner is mistaken in believing he was in full compliance with S.O.R.N.A. Telephoning law enforcement officials is not adequate registration;

3) The Indictment was sufficient on its face, and Defense counsel would have been inappropriate in moving the Court to dismiss;

4) Petitioner is mistaken because the Court would have determined his Tier offense level even if the case had gone to trial. Further, Petitioner is incorrect in the significance of the decision in Lawrence v. Texas, 539 U.S. 558 (2003);

5) Petitioner mistakes the "Acknowledgment Form" as a requirement for S.O.R.N.A. and that actual knowledge is not an element of the S.O.R.N.A. offense;

6) Defense counsel did argue for Petitioner's classification as a lower Tier offender;

7) Petitioner's argument is without merit because of his misconceptions of the nature, purpose, and legal significance of the Attorney General's Interim and Final Rules;

8) Any challenge to Maryland's S.O.R.N.A. implementation would have been baseless and futile;

9) Petitioner knowingly and intelligently waived his right to a detention hearing after conferring with Defense counsel;

10) Petitioner is mistaken about the significance of the fact that his qualifying conviction pre-dates both the Maryland and the federal retroactivity specifications, and Defense counsel cannot be faulted for not making this claim;

11) Fourth Circuit authority indicates that the Interim Rule was proper and did not violate the A.P.A.

ECF No. 78 at 8-38.

The Government put forth the following responses to Petitioner's Supplemental Motion to Vacate under 28 U.S.C. § 2255:

1) Petitioner's Supplemental Motion is time-barred;

2) Petitioner's claims are inappropriate for a Motion under § 2255; and

3) Petitioner's reliance on United States v. Acklin, 557 Fed. Appx. 237 (4th Cir. 2014) (unreported) is incorrect.

ECF No. 120 at 3-5.

### D. Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's §2255 motion be denied and dismissed from the docket. Although Petitioner's waiver of collateral rights did not bar all his ineffective assistance of counsel claims, his claims are nonetheless without merit.

<strong>I.<u>Analysis</u></strong>

### A. *Timeliness of Habeas Corpus*[2]

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion.  28 U.S.C. §2255.

The limitation period shall run from the last of:

1.  The date on which the judgment of conviction becomes final;

2.  The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental actions;

3.  The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.  The date on which the facts supporting the claim or claims presented have been discovered through the exercise of due diligence.

28 U.S.C. §2255.

In most cases, a judgment of conviction becomes final when the time for filing a direct appeal expires.   <u>Aikens v. United States</u>, 204 F.3d 1086, 1089 n. 1 (11th Cir. 2000).  There are two recognized exceptions to this general rule, which apply when a federal prisoner seeks direct appellate review of his conviction or sentence.  First, if following the disposition of his direct appeal, a federal prisoner files a petition for writ of certiorari with the U.S. Supreme Court, the conviction becomes final when the Supreme Court either denies certiorari or issues a decision on the merits.  <u>See</u> <u>Washington v. United States</u>, 243 F.3d 1299, 1300 (11th Cir. 2001).  Second, if the federal prisoner does not file a timely certiorari petition after disposition of his direct appeal,

<hr>

[2]In its original Motion to Dismiss, filed on April 8, 2013 [ECF No. 67], the United States argued that Petitioner's Motion to Vacate was untimely.  Although the United States did not raise this issue in its response to the Amended Motion to Vacate, the undersigned has deemed it appropriate to explain why Petitioner's § 2255 Motion is timely.

the conviction becomes final on the date on which the prisoner's time for filing such a petition expires, which is ninety days after entry of the judgment on direct appeal. See Clay v. United States, 537 U.S. 522, 532 (2003).

Here, Petitioner filed for an appeal, which the Fourth Circuit denied on November 17, 2011. ECF No. 51. Petitioner did not petition the Supreme Court for a writ of certiorari; thus, Petitioner's conviction became final ninety (90) days later, on February 15, 2012. Petitioner filed his Motion to Vacate exactly one year later, on February 15, 2013, and within the one-year statute of limitations. (28 U.S.C. § 2255(f)). Therefore, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 is timely.

### B. Applicable Law Regarding Petitioner's Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty

provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor.  Id. at 732.  Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures.  Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights.  Lemaster, 403 F.3d at 220 n.2.  The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary."  Id. at 220.  The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two.  Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver."  Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[3]  However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights.  Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver

---

[3]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton.  See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

itself, or do not relate directly to the plea agreement or the waiver." <u>Braxton</u>, 358 F. Supp. 2d at 503.

### C. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" <u>Attar</u>, 38 F.3d at 731 (quoting <u>United States v. Davis</u>, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." <u>United States v. Blick</u>, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." <u>United States v. General</u>, 278 F.3d 389, 400 (4th Cir. 2002).

### D. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." <u>Id.</u> Second, "the defendant must show that the deficient performance prejudiced the defense." <u>Id.</u> These two prongs are commonly referred to as the "performance" and "prejudice" prongs. <u>Fields v. Att'y Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. However, a reviewing court does not "grade" trial

counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

### E. Petitioner's Claims of Ineffective Assistance Prior to Plea

Included in Petitioner's laundry list of claims of ineffective assistance of counsel are multiple claims which arise before the entry of his guilty plea on January 24, 2011. The undersigned finds that those claims fall within the scope of Petitioner's collateral attack waiver. See Lemaster, 403 F.3d at 220 & n.2; Cannady, 283 F.3d at 645 n.3; Attar, 38 F.3d at 731, 732; Braxton, 358 F.Supp.2d at 503. A defendant who enters a voluntary guilty plea cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior

to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Menna v. New York, 423 U.S. 61, 62 n.2 ("A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.").

The undersigned finds that Petitioner's waiver of a right to file a motion pursuant to 28 U.S.C. § 2255 is knowing and intelligent. See Attar, 38 F.3d at 731. At the Rule 11 plea colloquy, Petitioner testified that he completed two years of college [ECF. No. 47, p. 4] and could read, write and understand the English language. Id. at 3. He further testified that he had no hearing impairment or other disability that would prevent him from fully participating in the hearing and had not been treated for mental illness or addiction to narcotic drugs for at least the last ten years. Id. at 4. In addition Petitioner acknowledged that by pleading guilty, he was bound by the guilty plea even if the sentence ultimately imposed was longer than he hoped for or expected. Id. at 17. Petitioner also testified that he reviewed the plea agreement in detail with his lawyer before he signed it. Id. Finally, Petitioner testified that he understood that he was giving up the right to file habeas corpus petitions attacking the legal validity of his guilty plea and the sentence. Id. at 11. At the conclusion of the plea colloquy, Magistrate Judge Joel found that Petitioner was competent to make a plea, the guilty plea was freely and voluntarily made and Petitioner had full knowledge and understanding of the consequences of the plea. Id. at 27. Therefore, the undersigned finds that Petitioner knowingly and intelligently waived his right to collaterally attack his conviction and sentence and is foreclosed from raising claims of ineffective assistance of counsel that occurred prior to entry of his guilty plea. Moreover, for the reasons set forth below, those claims are without merit.

**Counsel Failed to Investigate Petitioner's State Offense that Required Him to Register as a Sex Offender under S.O.R.N.A.**

As his first claim for relief, Petitioner states that Counsel failed to research the Maryland conviction that required Petitioner to register as a sex offender. Further, Petitioner states that if Counsel had researched his conviction, Counsel should have moved the court to dismiss the charge because the Supreme Court's holding in <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003) precludes Petitioner from having to register as a sex offender under S.O.R.N.A. ECF No. 73 at 9, 20. Specifically, Petitioner claims that he does not qualify as a sex offender under S.O.R.N.A. because of the Supreme Court's holding in <u>Lawrence</u>, which would retroactively apply to his state conviction of Sodomy General. ECF No. 84 at 10. Finally, Petitioner contends that Counsel "could have and should have moved the Court for a dismissal of the instant charge on the ground that the underlying charge does not require Petitioner to register as a Sex Offender under SORNA." ECF No. 73 at 16.

First, Petitioner is mistaken in his reliance on <u>Lawrence</u>. In <u>Lawrence</u>, the Supreme Court invalidated a Texas state criminal statute which criminalized "deviant sexual intercourse" between members of the same sex. <u>Lawrence</u>, 539 U.S. at 563. The Court held that the Texas statute "further[ed] no legitimate state interest" to justify the State's intrusion into the private lives of two consenting adults. <u>Id.</u> at 578. The Court stated that the petitioners' rights to "liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government." <u>Id.</u> The Court made the distinction, though, that "[t]he present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not be easily refused." <u>Id.</u> Thus, <u>Lawrence</u> stands to protect *consenting* adults from the intrusion by the government into their personal and private lives.

Here, by contrast, Petitioner pled guilty to and was convicted under a Maryland sexual criminal statute. ECF No. 1 at 4; ECF No. 35 at 17-20; ECF No. 84 at 2. The Maryland statute reads "[a] person who is convicted of sodomy is guilty of a felony . . . ." Md. Code Ann., Crim. Law § 3-321 (West 2015). The Pre-Sentence Investigation Report indicated that Petitioner had engaged in forcible anal intercourse with the victim, who was eighteen (18) years old, "mildly to moderately" mentally retarded, and legally blind. ECF No. 35 at 17-20. Further, the Pre-Sentence Investigation Report detailed other forcible sexual charges that were dropped in exchange for Petitioner's guilty plea. Id. Thus, the Texas statute and the Supreme Court's holding in Lawrence are easily distinguishable in this case. Counsel's performance fell well within the wide range of reasonable professional assistance.

**Counsel Failed to Fully Investigate Petitioner's Current Charge of Failing to Register as a Sex Offender**.

As his second claim for relief, Petitioner asserts that Counsel failed to research and investigate the charge against Petitioner for failing to register as a sex offender under S.O.R.N.A. ECF No. 73 at 6. Petitioner maintains that "[h]ad Counsel interviewed, taken statements and obtained records and documents from Petitioners' [sic] supervising authority, Counsel could have proved that Petitioner was in full compliance of Petitioners' [sic] registration requirements. . . ." ECF No. 73 at 6, 20. Further, Petitioner contends that S.O.R.N.A. Rules and Regulations makes exceptions for a homeless offender and Counsel failed to research these guidelines. ECF No. 56-1 at 45, 47-48, 84.

According to the 2008 National Guidelines for S.O.R.N.A. implemented by the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking ("S.M.A.R.T." Office), a sex offender must "provide . . . [t]he address of each residence at which the sex offender resides or will reside." 42 U.S.C. § 16914(a)(3). Further, "not later than 3 business days

after each change of name, residence, employment, or student status" an offender must "appear in person" at an appropriate office to "inform that jurisdiction of all changes in the information required for that offender." 42 U.S.C. § 16913(c). The registry requirements do not make special exemptions or rules for homeless offenders; rather, the statute defines "resides" as "the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13). The federal cases interpreting "habitually lives" clearly demonstrate that, if an itinerant sex offender regularly returns to sleep, eat his meals and keep personal belongings in a localized area, he will be deemed to reside there for the purposes of his S.O.R.N.A. obligations. See, e.g., United States v. Rock, 2011 WL 833333 (8th Cir. Mar. 11, 2011)(unreported); United States v. Voice, 622 F.3d 870 (8th Cir. 2010); United States v. Bruffy, 2010 WL 2640165 (E.D.Va. June 30, 2010)(in connection with a homeless defendant who stayed for an aggregate of 24 days in Alexandria, Virginia, finding that "a transient sex offender of ordinary intelligence...[understands] that a place where he stays on a regular basis for a period of multiple weeks when he has no other, more permanent place to call home is the place in which he 'resides.'")(unreported).

Petitioner acknowledges he was forced to leave the home of Mary Wynn in New Windsor, Maryland on or about August 17, 2010, due to a domestic violence protective order. ECF No. 56-1 at 14, 17, 19. He claims that he then became homeless and was going back and forth between Maryland and Falling Waters, West Virginia, where he was working on boats to earn money. Id. at 14, 17, 19, 43-45. Petitioner maintains that he was homeless for sixty-five days until he was arrested on October 21, 2010. Id. at 26, 81, 84. However, during this time, electronic security records indicate that Petitioner stayed in River Bend Park in Falling Waters, West Virginia for a total of fifty-three (53) nights between August 17, 2010 and October 17,

2010. ECF No. 35 at 3; ECF No. 78-1. Further, a vehicle registered in Petitioner's name listed Falling Waters, WV as his legal residence. ECF No. 35 at 4. Finally, several pieces of mail addressed to Petitioner listed a Falling Waters, WV post office box. Id.; ECF No. 78 at 15; ECF No. 84 at 17. When viewed as a whole, the evidence indicates that Petitioner resided in Falling Waters, West Virginia, and Counsel, then, acted appropriately and reasonably when faced with this evidence.

Further, Petitioner's last recorded registration for the purposes of complying with S.O.R.N.A. was June 23, 2010; although, Sgt. Frazier did update Petitioner's record on August 30, 2010 to show that Petitioner was homeless. ECF No. 56-7 at 2-3. There is no indication that Petitioner updated his registration in person, nor any indication that Petitioner registered his West Virginia residence. ECF No. 56-7 at 3. During this time, Petitioner contends he fulfilled his obligations because he remained in contact with Sgt. Frazier and called Sgt. Mahood of the West Virginia State Police. ECF No. 56-1 at 17-18, 29-30, 43-46. This contact was not sufficient to satisfy the requirements under S.O.R.N.A., which stipulates that the offender must update his registration in person. 42 U.S.C. § 16913(c). Based on this evidence, Counsel's performance fell well within the wide range of reasonable professional assistance.

**Counsel Failed to Challenge the Indictment based on Petitioner's Compliance with S.O.R.N.A.**

For his third claim, Petitioner contends that Counsel failed to correct the court with regards to his last registration date, that Counsel's failure deprived Petitioner "of mitigating factors for not registering in West Virginia prejudicing Petitioners [sic] right to a dismissal of the Indictment" and that Petitioner maintained contact with his "supervising authority" which satisfied "S.O.R.N.A.'s Rules and Regulations" in Maryland. ECF No. 73 at 14, 20. This claim appears to be strongly related to Claim Two. Specifically, Petitioner contends that Counsel

should have challenged the Indictment because Petitioner had registered as "homeless" in Maryland on August 30, 2010. Id.

As previously discussed, Sgt. Frazier updated Petitioner's record as "homeless," which was recorded on August 30, 2010. ECF No. 56-7 at 3. However, this update by Sgt. Frazier was not enough to satisfy Petitioner's obligations. Further, as already discussed, the record indicates Petitioner was residing in Falling Waters, WV at the time and had failed to register in West Virginia. ECF No. 35 at 4; ECF No. 78 at 15; ECF No. 84 at 17. Thus, Petitioner was not satisfying his S.O.R.N.A. obligations. Accordingly, considering the evidence against Petitioner, Counsel acted reasonably in not moving for a dismissal of the indictment, and Counsel's actions were within the wide range of reasonable professional assistance.

**Counsel Convinced Petitioner to Unknowingly Sign a Plea Agreement Against his Interest.**

As his fourth claim, Petitioner contends that, upon the advice of Counsel, he "unknowingly and against his interest, signed a superceding [sic] plea agreement." Petitioner contends that this agreement "re-classified him as other than a Tier III sex offender." ECF No. 73 at 20. Further, Petitioner believes that he does not qualify as a sex offender under "Constitutional law, Statutory law, and Case law." Id.

First, the record indicates that Marsh knowingly and voluntarily accepted the Government's plea agreement. ECF No. 47 at 11. This was further confirmed by the affirmation of the Fourth Circuit Court of Appeals. ECF No. 50 at 3.

Next, Petitioner's Tier level was a sentencing issue and would not be stated in the plea agreement. ECF No. 30; ECF No. 47. Further, even if the plea agreement had stipulated to Petitioner's Tier level, the sentencing court is not bound to accept the stipulation and may determine differently with the assistance of the Pre-Sentence Investigation Report. ECF No. 47

at 11. Petitioner testified that he understood the court was not bound to accept the stipulations of the plea agreement. Id. Petitioner fails to recognize that his Tier level would have been determined by the court even if Petitioner had elected to go to trial because that determination is purely a sentencing issue. Further, Counsel did argue on Petitioner's behalf for a lower Tier level during the sentencing hearing, as would be required of a reasonable attorney. ECF No. 48 at 4. Thus, the undersigned finds that Counsel's actions were within the wide range of reasonable professional assistance.

Finally, as discussed previously, Petitioner's reliance on Lawrence v. Texas is mistaken. However, that issue is not before this Court because it is challenging his prior conviction in Maryland. Petitioner satisfies the definition of "sex offender" under S.O.R.N.A. and is required to register. Counsel acted reasonably in his actions regarding Petitioner's arguments about this case.

**Counsel Failed to Challenge the Government to Produce an "Acknowledgment Form."**

As his fifth claim, Petitioner argues that Counsel should have "challenged the Government to produce an 'Acknowledgment Form.'" ECF No. 73 at 21. Petitioner contends that the Government could not produce the Acknowledgment Form, which proved that "Petitioner was never appraised [sic] of SORNA's [sic] Rules and Regulations." Id. Petitioner states that the lack of Acknowledgment Form would further prove Petitioner never "knowingly" violated S.O.R.N.A. under 18 U.S.C. § 2250. Id. Further, Petitioner contends that he was never made aware of S.O.R.N.A.'s existence, but, rather, only his obligations to register under Maryland law. ECF No. 56-1 at 61. Petitioner also argues that he does not qualify as a sex offender under S.O.R.N.A. because of the Supreme Court's ruling in Lawrence, as well as 42

U.S.C. § 16911(5)(c). Id. at 89-90. Finally, Petitioner again contends that his last registration was actually August 30, 2010, satisfying his obligations to register. Id. at 64.

With respect to Petitioner's reliance on Lawrence and his claimed registration date of August 30, 2010, those arguments are foreclosed. Petitioner meets the qualifications for a sex offender under S.O.R.N.A. Further, Sgt. Frazier's updating of Petitioner's file does not satisfy Petitioner's obligations to register.

Additionally, the "Acknowledgement Forms" that Petitioner identifies are not a required element of a violation of Failure to Register under 18 U.S.C. § 2250. The supplemental guidelines issued by the Attorney General are meant to address issues arising with states' implementation of S.O.R.N.A. and provide further proof of an offender's knowledge to register. 75 FR 27362-02 at 27363 (May 14, 2010). The Government is correct in asserting that nothing in S.O.R.N.A., or any case law interpreting S.O.R.N.A. makes such a form an indispensable part of prosecution. ECF No. 78 at 26. As such, Counsel cannot be faulted for not challenging the Government to produce an Acknowledgement Form.

Next, Petitioner is not required to have specific knowledge of S.O.R.N.A. to be convicted of failure to register. See United States v. Gould, 568 F.3d 459, 468 (4th Cir. 2009) (holding that S.O.R.N.A. is not a specific intent law and that the defendant need not know "his failure to register violated federal law.") The Ninth Circuit Court of Appeals expanded on this interpretation, stating,

> "In light of this analysis, we interpret § 2250(a)(3) as requiring the government to prove that convicted sex offender knew of **a** registration requirement and knowingly failed 'to register or update a registration.' It does not require the government to prove that the sex offender also knew that the failure to register violates S.O.R.N.A."

United States v. Crowder, 656 F.3d 870, 877-78 (9th Cir. 2011) (emphasis added). Further, ignorance of the law does not provide a defense to a violation. Gould, 568 F.3d at 468 (citing

Cheek v. United States, 498 U.S. 192, 199 (1991)). Thus, failing to register or update his state

law obligation is sufficient to prove a violation under S.O.R.N.A. See Gould, 568 F.3d at 468;

Crowder, 656 F.3d at 877-78.

**Counsel Failed to Argue that Petitioner did not "Disappear" According to the Attorney General's "Interim Rule" and "Example 2"**

As his sixth claim, Petitioner contends that the Attorney General's "Final Guidelines" did

not take effect until January 28, 2011, and did not apply to Petitioner at the time of arrest. ECF

No.73 at 18. Further, Petitioner also claims that he did not "disappear" as required by "Example

#2" of the Final Guidelines and thus did not "subject Petitioner to liability under SORNA [sic]."

ECF No. 56-1 at 100. Petitioner notes that the "Final SMART guidelines" were updated so that

"relocates" replaced "disappears" in Example #2. Id. at 100. Finally, Petitioner claims that

Counsel failed to argue that Petitioner was in weekly contact with his "supervising authority"

and thus did not disappear as required by Example #2 or try to "circumvent the Attorney

General's interim rules." ECF No. 73 at 18.

The Attorney General of the United States published an "Interim Rule" on the

applicability of S.O.R.N.A. on February 28, 2007. (72 F.R. 8897)(codified at 28 C.F.R. § 72).

Under §72.3, the Interim Rule lists two examples, with hypothetical fact patterns, to demonstrate

how S.O.R.N.A. would apply in various scenarios. Id. In Example 2, the hypothetical offender

initially registered in his state of conviction as a sex offender. Id. The offender then

"disappeared" for a few years, but was discovered residing in a different state, after the

enactment of S.O.R.N.A. Id. The example illustrated that S.O.R.N.A. would apply to that

offender and impose registration obligations on him. Id.

The "Final Rule" became effective on January 28, 2011. 75 F.R. 81849 (codified at 28

C.F.R. § 72). In the summary of the rule, the Attorney General specified:

"By this rule, the Department of Justice is finalizing an interim rule specifying that the requirements of the Sex Offender Registration and Notification Act, Title I of Public Law 109-248, apply to all sex offenders, including sex offenders convicted of the offense for which registration is required before the enactment of that Act."

Id. This Final Rule modified some of the language in Example 2. The hypothetical fact pattern now states that the offender "relocated" to a different state sometime after S.O.R.N.A. was enacted, rather than "disappeared." Id. This distinction was important because the Supreme Court had ruled that a sex offender's interstate travel must have occurred after the enactment of S.O.R.N.A. on July 27, 2006. Carr v. United States, 560 U.S. 438, 447 (2010) (holding that "[o]nce a person becomes subject to SORNA's, he can be convicted under §2250 if he thereafter travels and then fails to register."). Further, the Supreme Court also held that S.O.R.N.A. began to apply retroactively to sex offenders only after the Attorney General specified that the Act's provisions apply to pre-Act offenders. Reynolds v. United States, 132 S.Ct. 975, 980 (2012). Accordingly, the Fourth Circuit determined that S.O.R.N.A. did not begin to apply retroactively until the Attorney General issued his "Interim Rule" on February 28, 2007. United States v. Hatcher, 560 F.3d 222, 226 (4th Cir. 2009).

Petitioner is mistaken about the applicability of the examples used in the Attorney General's "Interim Rule" and "Final Rule" and, therefore, Counsel cannot be deemed ineffective for failing to raise those issues. The examples are merely that: examples. The examples do not create any requirements under S.O.R.N.A. or specify exactly how a S.O.R.N.A. offense is to be committed. The examples merely show how the Act would apply to pre-Act offenders. The relevant facts in this case are that Petitioner traveled in interstate commerce to West Virginia, after February 28, 2007, where he resided for thirty-four (34) consecutive nights and up to fifty-three (53) nights total, while failing to register or update his sex offender registration to reflect

his residence there. Thus, the undersigned finds that Counsel cannot be faulted for not arguing Petitioner's status under the interim rules.

**Counsel Failed to Challenge the Validity and Implementation of Maryland's S.O.R.N.A Statutes.**

As his seventh claim, Petitioner contends that the state of Maryland did not substantially implement S.O.R.N.A. until July, 2011. ECF No. 73 at 19. Petitioner also claims that Maryland registration requirements as of October 1, 2010, when S.O.R.N.A. was first implemented in Maryland, do not apply to him because of the state's failure to substantially implement the regulations. Id. at 18 Further, Petitioner argues that the last twenty-one (21) days under S.O.R.N.A. regulations, October 1 until his arrest, were not substantial enough for Petitioner to be charged. ECF No. 56-1 at 102. Finally, Petitioner claims that Counsel failed to "research and investigate" the statute, and thus failed to "represent and defend Petitioner." ECF No. 73 at 18-19.

As an initial matter, Petitioner is correct that the S.M.A.R.T. Office issued a report in February, 2011, that stated that Maryland had not yet substantially implemented S.O.R.N.A. ECF No. 56-1 at 102; ECF No. 56-31. However, Petitioner is mistaken in his belief that the state's ongoing process of facilitation invalidates his conviction.

The S.M.A.R.T. Office review of a state's implementation of S.O.R.N.A. does not bestow any rights on sex offenders or impede prosecution of offenses. Rather, a state's failure to "substantially implement" S.O.R.N.A. only subjected the state to a loss of funding to assist the implementation. See 73 F.R. 38030 at 38036. The Fourth Circuit Court of Appeals confirmed that the failure of a state to implement S.O.R.N.A. does not bestow rights on offenders, stating that "the requirement imposed on individuals to register is independent of the requirement imposed on the States to implement the enhanced registration and notification standards of

SORNA." Gould, 568 F.3d at 466. The S.M.A.R.T. Office review process did not bestow any rights on Petitioner, nor did the review impede the prosecution. Further, the S.M.A.R.T. Office review did not change or negate Petitioner's obligations to register under S.O.R.N.A. Thus, Counsel cannot be deemed ineffective for failing to raise this argument.

### Counsel Failed to Request a Pre-Trial Hearing

As his eighth claim, Petitioner contends that Counsel failed to heed Petitioner's request for a pre-trial detention hearing. ECF No. 73 at 19. Specifically, Petitioner claims that Counsel "refused and totally ignored Petitioners' [sic] request for his Constitutional Due Process rights." (Id.). Petitioner claims that "[b]ail was most important in preparing and obtaining information favorable to support a defense of innocense [sic]." ECF No. 56-1 at 29.

First, the undersigned notes that Petitioner knowingly waived his right to a detention hearing. ECF No. 10. Further, the court at the preliminary examination found that Petitioner had knowingly and intelligently waived his right to a detention hearing after consulting with Counsel. ECF No. 12 at 1. Despite this finding, the undersigned will continue with the analysis of Petitioner's claim.

The two relevant issues when determining pre-trial release are 1) whether the person is a flight risk and 2) whether the person poses a danger to the community. 18 U.S.C. § 3142. In the instant case, Petitioner claims he had multiple places to stay which decreased his potential for flight. ECF No. 56-1 at 68-69. However, Petitioner had an extensive criminal history, which included violent crimes, sex crimes, and substance abuse. ECF No. 35 at 10, 12-14, 17, 24. A Magistrate Judge conducting a Pre-Trial Detention Hearing may well have considered Petitioner to be a danger to the community, based on these multiple offenses. Counsel likely inferred that an attempt to obtain Petitioner's release would have been fruitless, and thus did not err in his

determination. Furthermore, Petitioner makes no reasonable argument that his case would have ended differently if he had not been detained pending trial.

**Counsel failed to argue that Petitioner was a Pre-Act Sex Offender and Exempt From Prosecution for Failure to Register under 18 U.S.C. § 2250.**

As his ninth claim, Petitioner contends that, because of the Maryland Court of Appeals ruling in <u>Doe v. Department of Public Safety and Correctional Services</u>, he is exempt from having to comply with S.O.R.N.A.'s registration requirements because he was convicted of a sex offense prior to the enactment of S.O.R.N.A. ECF No. 73 at 19-20. Petitioner additionally claims that the Maryland Court of Appeals ruling declares all of the S.O.R.N.A. laws unconstitutional under Maryland's Declaration of Rights, Article 17. <u>Id.</u> at 19. Petitioner further contends that Counsel failed to investigate the Maryland laws that required Petitioner to register and could have found that Petitioner was "protected as a Pre-Act Offender under Marylands [sic] Declaration of Rights." <u>Id.</u> at 20. Further, Petitioner claims that Counsel, in his research of Maryland's registration laws, would have found that Petitioner was not "subject to violations under SORNA." <u>Id.</u> Finally, Petitioner contends that his sentence violates Maryland's Constitution and "violates Petitioner under the EX-POST-FACTO CLAUSE [sic]." <u>Id.</u>

In <u>Doe v. Dep't of Pub. Safety and Corr.</u>, 430 Md. 535 (2013), Doe, convicted in 2006 for a sex crime that happened during the 1983-84 school year, challenged the portion of his sentence that required him to register as a sex offender. <u>Id.</u> at 540. The Circuit Court, in November 2006, agreed with Doe, as the law in effect at the time provided that offenders must register if the crime occurred before 1995 *and* the offender was "under the custody or supervision of the supervising authority on October 1, 2001." <u>Id.</u> Subsequently, in 2009, the Maryland General Assembly passed a new law, which retroactively applied to Doe, and then again in 2010, which further re-categorized Doe as a Tier III offender, thus imposing greater

registration obligations upon him. Id. at 540-41. Doe appealed his sentence on the grounds that requiring him to register violated the terms of the plea agreement, as well as challenging the statute on *ex post facto*, bill of attainder, equal protection and due process grounds. Id. at 542. The Maryland Court of Appeals held that requiring an offender to register violated Maryland's constitutional prohibition on *ex post facto* grounds. Id. at 568.

Petitioner cannot claim ineffective assistance of counsel for failing to research a decision that had not yet occurred at the time of his plea and sentencing. Actions by counsel must be "viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Counsel cannot be faulted then, as this case had not yet been decided. The undersigned also notes that the Maryland Court of Appeals specifically declined to address whether or not a defendant was independently required to register as a sex offender under federal law. Doe, 430 Md. At 544. The undersigned also notes that Petitioner's violation of failure to register under S.O.R.N.A. occurred after the enactment of S.O.R.N.A. and the Attorney General's Final Rule, announcing the applicability to pre-Act offenders. Thus, at the time of his plea, Counsel's actions are deemed to have fallen within the wide range of professional reasonable assistance.

### F. Petitioner's Claims of Ineffective Assistance Counsel *After Plea*

### Failed to Object to, or Correct Major Inaccuracies in the Pre-Sentence Investigation Report

Petitioner contends that Counsel failed to correct inaccuracies in the Pre-Sentence Investigation Report, which, in turn, "caused Petitioner prejudice" and "unwarranted upward departures in sentencing." ECF No. 73 at 12. Petitioner further contends that the P.S.R. was "inaccurate and incomplete" as to his criminal and medical history and "inaccurate" as far as his current offense and other criminal conduct. ECF. No. 56-1 at 20.

Petitioner contends that the P.S.R. did not reveal "the complete history of the facts" for his conviction under Maryland's Sodomy General Law; that the P.S.R. is incomplete pertaining to his dismissed charges regarding murder and robbery in 1972; that Counsel failed to investigate his pending assault charge from 2010 in Westminster, Maryland; and that the P.S.R. incorrectly lists June 23, 2010, as his last registration date under S.O.R.N.A. ECF. No. 56-1 at 21-26. Petitioner asserts that the incompleteness and inaccuracies of these incidents within the P.S.R. unfairly prejudiced him before the court for sentencing. ECF No. 56-1 at 21.

First, the P.S.R. included the necessary evidence relating to Petitioner's conviction under General Sodomy in Maryland. ECF No. 35 at 17. The P. S. R. also included the numerous other offenses in that case there were ultimately dropped as a result of Petitioner's plea agreement. Counsel can be considered to have acted appropriately in not objecting to the P. S.R. in this regard, as the pertinent information regarding the offense was included.

Further, no more information is necessary pertaining to the set-aside convictions of murder and robbery in 1972. The convictions are noted as "set aside" and "Nolle Prosequi" in the P. S. R. and did not add any additional points to Petitioner's total criminal history. ECF No. 35 at 28. To the extent of charges brought against any other offenders or misconduct by police in the investigation, that evidence is not relevant to the calculation of Petitioner's own criminal history. Counsel acted appropriately in not objecting or challenging the P. S.R., as any additional information regarding this entry would have been unnecessary and did not prejudice Petitioner.

**Counsel failed to argue against Petitioner's Classification as a Tier III Sex Offender at Sentencing**

Petitioner contends that he was brought before the Court "against his will or consent to be classified as a Tier III offender." ECF No. 73 at 17. Further, Petitioner claims that Counsel

"prepared no argument that would support or bring forth documents that would support Petition." Id. Petitioner also contends "Counsels [sic] arguments to the Court were frivilous [sic] and without facts to support, as well as timely submitted as to Court rules." Id. Finally, Petitioner argues that Counsel failed to introduce testimony that "surely made Petitioner a member of society." ECF No. 56-1 at 69. As a result, Petitioner claims to have suffered "extreme prejudice" during the sentencing hearing, as well as "the defamation of Petitioners [sic] character." Id.

First, the undersigned finds that Counsel did make an argument on Petitioner's behalf during the sentencing hearing. The specific argument was that the court should ignore Maryland's retroactive designation of Petitioner's offense as "Forcible Sodomy," and, rather, to consider the fact that Maryland authorities chose to prosecute and convict petitioner under "General Sodomy," a Tier I offense without aggravating circumstances. ECF No. 48 at 4-7. In the sentencing hearing, Counsel argued:

> It would be inappropriate for us to substitute our judgment for the appropriate prosecuting authorities in Maryland. They were the ones that were there. They were the ones that reviewed the evidence, interviewed the witnesses, and made the decision whether to prosecute and what not to prosecute at that time. And clearly, as I said, they decided not to prosecute Tier II and Tier III offenses.

ECF. No. 48 at 6. Thus, the record clearly indicates that Counsel made an argument in support of Petitioner at sentencing.

Moreover, Counsel objected to exhibits the Government attempted to introduce into evidence during the sentencing hearing and to the sentence itself. ECF No. 48 at 9, 30. The Government wished to introduce three exhibits that detailed the sentencing levels for aggravated

offenses under the Maryland Code. Id. at 9-10. However, Counsel objected to the exhibits, because two of the exhibits did not reference the Maryland statute Petitioner had been convicted under. Id. at 9-10. The court only admitted one exhibit into evidence, which did reference the statute, and disregarded the two that did not. Id. at 10. Finally, Counsel objected to the sentence imposed by the court. Id. at 30. Petitioner's claim that Counsel did not argue on his behalf at sentencing is without merit. Therefore, the undersigned finds that Counsel did prepare and adequately defend Petitioner at the sentencing hearing, and his actions were within the wide range of reasonable professional assistance.

**Petitioner's S.O.R.N.A. Conviction is Invalid Because He is a Pre-Act Offender and the Attorney General's Interim Rule Violates the Administrative Procedures Act**

Here, Petitioner contends that a recent decision by the Third Circuit Court of Appeals invalidates the "Interim Rule" of the Attorney General and does not apply to pre-Act sex offenders. ECF No. 73 at 20. Specifically, Petitioner reasons that United States v. Reynolds, 710 F.3d 498 (3rd Circ. 2013) (holding that Attorney General did not show good cause for waiving Administrative Procedure Act's notice and comment requirements in promulgating an interim rule governing the retroactivity of S.O.R.N.A.), invalidates the Attorney General's "Interim Rule" in that the rule violates the Administrative Procedure Act for failure to give "Notice and Comment." ECF No. 73 at 20. Petitioner's claim is not framed as ineffective assistance of counsel.

Petitioner's reliance on the Third Circuit's decision in United States v. Reynolds is misplaced. Maryland and West Virginia are both in the Fourth Circuit, and therefore, Fourth Circuit precedent controls. The Fourth Circuit has held that the Interim Rule was proper and did not violate the A.P.A. Gould, 568 F.3d at 469-70)(concluding that "the Attorney General had

good cause to invoke the exception to the 30-day notice"); Interim Regulation 72.3 (codified at 28 C.F.R. § 72.3 (2007). Because Petitioner's travel and conduct post-dated February 28, 2007, the date the Interim Rule was issued, he was subject to prosecution and properly sentenced. United States v. Hatcher, 560 F.3d 222, 226 (4th Cir. 2009).

### G. Petitioner's Supplemental Motion to Vacate

More than sixteen months after filing his Motion to Vacate Under §2255, Petitioner filed a "Supplement" to his Motion to Vacate. ECF No. 108. In it, Petitioner raises additional issues in regards to his sentence, which he couches as "Ineffective Assistance of Counsel" for Counsel's failure to object to the terms of his supervised release. Id. at 1-2. Further, Petitioner claims that United States v. Acklin, 557 Fed.Appx. 237 (4th Cir. 2014) dictates that the supervised release range is only for the statutory minimum of five years, following a conviction for failure to register. Id. at 3-4.

First, the undersigned notes that Petitioner gives no reason for why he did not raise these issues in his original or amended Motions. Clearly, he has been aware of the conditions and duration of his supervised release since his sentencing hearing on May 9, 2011. Accordingly, the undersigned finds that these supplemental claims are time-barred. Petitioner's original Motion to Vacate was filed precisely within the one year statute of limitations as noted above. Therefore, to allow him to file additional grounds some seventeen months later would permit him to circumvent the statute of limitations.

Moreover, these "supplemental" claims are inappropriate for redress in a § 2255 Motion because they involve minor sentencing issues pertaining to supervised release and do not allege constitutional violations or imposition of a sentence beyond the statutory maximum. See United

States v. Mikalajunas, 186 F.3d 490, 496-97 (4th Cir. 1999) (holding that "the mere misinterpretation or application of a guideline provision generally does not amount to a miscarriage of justice that warrants relief under § 2255."); United States v. Rosales, 2013 WL 5876714 (S.D IN)(unreported)(petitioner's claim that three-year term of supervised relief was unreasonable did not set forth a constitutional issue and was not appropriate for § 2255 relief). Furthermore, Petitioner's attempts to disguise these claims as "Ineffective Assistance of Counsel" does not save them from dismissal. See Durrive v. United States, 4 F.3d 548, 551 (7th Cir. 1993) (holding that non-significant sentencing errors cannot form the basis for an ineffective assistance of counsel claim in a *habeas* petition.). Accordingly, because Petitioner has improperly raised these claims under § 2255, the undersigned recommends denying and dismissing the claims.

Finally, the undersigned notes that the decision in United States v. Acklin does not stand for the notion that any term of supervised release for more than five years is unconstitutional or illegal. Rather, Acklin addresses the conflict between the United States Sentencing Guidelines and 18 U.S.C. § 2250, the statute under which Petitioner was convicted. See United States v. Collins, 773 F.3d 25, 31-32 (4th Cir. 2014) (discussing Acklin) (finding that "[t]he amendment resolves an uncertainty created by contradictory language in the Guidelines and § 2250 rather than revising a preexisting rule."). The new amendment to the Guidelines, in November of 2014, effectively resolved this conflict. U.S.S.G. §5D1.2 App. Notes 1, 6. Regardless, Acklin cannot form the basis of a new claim of ineffective assistance of counsel because actions by counsel must be "viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Because the

decision in <u>Acklin</u> came three years after Petitioner's sentencing, Petitioner cannot now claim ineffective assistance of counsel with <u>Acklin</u> as a base.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss [ECF No. 67] be **GRANTED**; Petitioner's Motion to Compel [ECF No. 120) be **DISMISSED AS MOOT**; Respondent's Motion for Reconsideration [ECF No. 129] be **DENIED**; and Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 3:13-cv-15, ECF No. 1; Criminal Action No. 3:10-cr-76, ECF No. 56, 73, 108] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West

Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Guy Gordon Marsh, by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED: August 13, 2015

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE