**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**GUY GORDON MARSH,**

       Petitioner,

**v.**                               **CIVIL ACTION NO. 3:13-CV-15**
                                       **CRIMINAL ACTION NO. 3:10-CR-76**
                                     **(BAILEY)**

**UNITED STATES OF AMERICA,**

       Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

**I.**    **Introduction**

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge Robert W. Trumble [Civ. Doc. 20; Crim. Doc. 131], filed August 13, 2015 in the civil case, and August 14, 2015, in the criminal case.[1]  In that filing, the magistrate judge recommends that this Court grant Respondent's Motion to Dismiss; that Petitioner's Motion to Compel be dismissed as moot; that Respondent's Motion to Reconsider and Dismiss be denied; and that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be denied and dismissed with prejudice.

---

[1] This Court notes that while Petitioner was released from custody of the Federal Bureau of Prisons on February 27, 2015, this Court will consider the merits of Petitioner's motion because he was in custody at the time of this Motion's filing.  *See **Carafas v. LaVallee***, 391 U.S. 234 (1968); *see also **Pollard v. United States***, 352 U.S. 354 (1957).

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, this Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Additionally, when a party files objections, "but these objections are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, *de novo* review is unnecessary." **Green v. Rubenstein**, 644 F.Supp.2d 723, 730 (S.D. W.Va. 2009) (*citing* **Orpiano v. Johnson**, 687 F.2d 44, 47 (4th Cir. 1982)). Here, objections to Magistrate Judge Trumble's R&R were due within fourteen (14) days of the receipt of the R&R. Petitioner accepted service of the R&R on August 20, 2015 [Civ. Doc. 21; Crim. Doc. 132], and timely filed objections to the R&R on September 3, 2015 [Civ. Doc. 22; Crim. Doc. 133]. Accordingly, this Court will undertake a *de novo* review of those portions of the magistrate judge's findings to which objection is made. This Court will review the remainder of the R&R for clear error.

## II. **Background**

### A. Procedural History:

On February 15, 2013, Guy Gordon Marsh ("Petitioner"), filed a *pro se* Motion Under 28 U.S.C. § 2255 ("2255") to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody [Civ. Doc. 1; Crim. Doc. 56]. Petitioner filed an amended Motion to Vacate under 2255 ("Amended Motion") on April 26, 2013 [Civ. Doc. 5; Crim. Doc. 73], to which the Government responded on June 19, 2013 [Crim. Doc. 78]. Petitioner filed his Reply to the Government's Response ("Reply to Response") on August 5, 2013 [Crim. Doc. 84], then filed a Motion to Supplement his Motion to Vacate on July 7, 2014 [Crim. Doc. 108]. On December 11, 2014, Petitioner's Motion was granted, and the Respondent was afforded twenty-one days to file a response to the supplement. [Crim. Doc. 123]. On December 15, 2014, the Government filed a Motion to Reconsider and a Motion to Dismiss [Crim. Doc. 129]. Magistrate Judge Trumble filed the instant R&R on August 13, 2015 in the civil case, and August 14, 2015, in the criminal case [Civ. Doc. 20; Crim. Doc. 131]. Petitioner filed his objections to that R&R on September 3, 2015 [Civ. Doc. 22; Crim. Doc. 133].

B. Conviction and Sentence:

On October 21, 2010, Attorney Paul G. Taylor was appointed to represent Petitioner [Crim. Doc. 8], and he was indicted by the Grand Jury on November 16, 2010 with one count of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a) [Crim. Doc. 13]. On January 24, 2011, Petitioner signed a plea agreement by which he agreed to plead guilty to Count 1, failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a) [Crim. Doc. 30]. Notably, as part of his plea agreement, Petitioner waived his right to appeal and to collaterally attack his sentence:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives

the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

[Crim. Doc. 30 at 3-4].

On January 24, 2011, Petitioner entered his plea in open court before Magistrate Judge Joel, at which time the Court specifically asked Petitioner if he understood the waiver of his appellate right and his "right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence." [Crim. Doc. 47 at 11].  Petitioner, who at the time was 64 years old and completed two years of college, answered "yes, sir." [Id.].  When asked by the Court whether Petitioner understood the waiver of appellate and post-conviction rights, Petitioner's counsel answered in the affirmative [Id.].  Petitioner also acknowledged that he understood the failure to register as a sex offender charge which he faced [Id. at 13-14].  After reviewing the rights Petitioner was giving up by pleading guilty, the Court found that Petitioner understood the consequences of the guilty plea [Id. at 19].

Next, the Government called Deputy Michael Ulrich of the United States Marshals who presented the case [Id.].  After the factual basis for the plea was established by the Government, Petitioner advised the Court that he was pleading guilty to Count 1 of the Indictment [Id. at 25].  Petitioner further stated that no one attempted to threaten or force him to plead guilty, that he was pleading guilty of his own free will, and that the plea was

not the result of any promises made to him, other than those in the plea agreement [Id.].

Petitioner then testified that his counsel had adequately represented him and that he had

done a "good job." [Id. at 26]. Finally, Petitioner said he was in fact guilty of the crime to

which he was pleading guilty [Id.]. At the conclusion of the hearing, the Court determined

that the guilty plea was made freely and voluntarily, that Petitioner understood the

consequences of the plea and that the elements of Count 1 were established beyond a

reasonable doubt [Id. at 27]. Petitioner did not object to the Court's finding.

On May 9, 2011, Petitioner appeared before this Court for sentencing [Crim. Doc.

48]. Petitioner's counsel raised two objections in regard to the presentence report: (1) the

Tier level at which Petitioner would be sentenced; and (2) Petitioner's attempt to register

or correct the failure to register by contacting the West Virginia State Police prior to his

arrest [Id. at 4]. The Court overruled both objections based upon the discussion and

evidence presented, reasoning that the Petitioner was a Tier III registrant, and that "the

inquiry made of the State Trooper does nothing to obviate the crime in this case." [Id. at

13]. After considering several factors, including the circumstances of both the crime and

the defendant, the Court sentenced Petitioner to a term of sixty (60) months' imprisonment,

thirty (30) years' supervised release, a special assessment of $100.00, but elected not to

levy a fine [Id. at 20]. The Court entered its Judgment on May 11, 2011 [Crim. Doc. 38].

C. Direct Appeal

Petitioner filed his "Notice of Appeal" on May 23, 2011 [Crim. Doc. 40]. After Paul

Taylor moved to be terminated as counsel on appeal, Brian Kornbrath, Federal Public

Defender for the Northern District of West Virginia, was appointed by the Court to represent

Petitioner during the appellate process [Crim. Doc. 44]. Petitioner's counsel filed a brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967), which addressed the validity of the guilty plea and the reasonableness of the sentence, but concluded that there were no meritorious issues for appeal [Crim. Doc. 50 at 2]. Petitioner then filed a *pro se* brief challenging the voluntary and knowing nature of the plea and asserting that the Government breached the plea agreement [Id.].

The Fourth Circuit determined, by per curiam opinion, that Petitioner knowingly and voluntarily waived his right to appeal the sentence, and thus granted the Government's motion to dismiss Petitioner's appeal as to his sentence [Id. at 3]. The Fourth Circuit also, pursuant to **Anders**, reviewed the plea colloquy and found that no meritorious issues existed [Id.]. Thus, the Fourth Circuit denied the Government's motion to dismiss the appeal from the conviction, and affirmed Petitioner's conviction [Id.]. Petitioner did not petition the United States Supreme Court for a writ of *certiorari*.

D. Federal Habeas Corpus:

i. **Claims Raised in Petitioner's Motion and Supplemental Motion**:

In his Amended Motion, Petitioner raises the following twelve (12) claims in support of his Motion and his request that the Court vacate, set aside or correct his sentence: (1) Counsel did not research or investigate Petitioner's underlying charge of General Sodomy in Maryland in conjunction with his instant charge of Failure to Register as a Sex Offender (18 U.S.C. § 2250(a)); (2) Counsel failed to investigate Petitioner's non-compliance with the Sex Offender Registration and Notification Act ("S.O.R.N.A.") because Petitioner contacted law enforcement officials by telephone, indicating that he was homeless; (3)

Counsel failed to object to inaccuracies in the Pre-Sentence Report ("P.S.R."); (4) Counsel failed to challenge the Indictment based on compliance with S.O.R.N.A.; (5) Counsel provided poor advice to accept the plea agreement, which allowed the Court to determine Petitioner's Tier Offense level and categorized Petitioner as a sex offender; (6) Counsel failed to challenge the Government's proof of knowledge; (7) Counsel failed to argue against his classification as a Tier III offender at sentencing; (8) Counsel failed to argue that Petitioner did not "disappear" according to the Attorney General's "Interim Rule" and "Example 2;" (9) Counsel failed to challenge the validity of Maryland's Sex Offender Registration Law; (10) Counsel failed to request a pre-trial detention hearing; (11) Counsel failed to argue that Petitioner was a Pre-Act Sex Offender and exempt from prosecution for failure to register; and (12) Petitioner's conviction and sentence are invalid because S.O.R.N.A. does not apply to Pre-Act Offenders and the Attorney General's Interim Rule violates the Administrative Procedure Act (5 U.S.C. § 553(b)) [Crim. Doc. 73 at 9-25].

In Petitioner's Supplemental Motion to Vacate under 28 U.S.C. § 2255, he further claims that counsel was ineffective for failing to object to the terms of the Court's sentence, specifically with regards to the thirty year term of supervised release and the "Additional Special Conditions" [Crim. Doc. 108 at 1-2].

### ii. Government's Response:

In addition to arguing that Petitioner's motion is foreclosed by the waiver, Respondent asserts the following: (1) Defense counsel did not err in failing to challenge Petitioner's Maryland conviction and his obligations under S.O.R.N.A.; (2) Petitioner is mistaken in believing he was in full compliance with S.O.R.N.A., because telephoning law

enforcement officials does not constitute adequate registration under the law; (3) The Indictment was sufficient on its face, and Defense counsel would have been inappropriate in moving the Court to dismiss; (4) Petitioner is mistaken because the Court would have determined his Tier offense level even if the case had gone to trial. Further, Petitioner is incorrect in the significance of the decision in *Lawrence v. Texas*, 539 U.S. 558 (2003); (5) Petitioner mistakes the "Acknowledgment Form" as a requirement for S.O.R.N.A. and that actual knowledge is not an element of the S.O.R.N.A. offense; (6) Defense counsel did argue for Petitioner's classification as a lower Tier offender; (7) Petitioner's argument is without merit because of his misconceptions of the nature, purpose, and legal significance of the Attorney General's Interim and Final Rules; (8) Any challenge to Maryland's S.O.R.N.A. implementation would have been baseless and futile; (9) Petitioner knowingly and intelligently waived his right to a detention hearing after conferring with Defense counsel; (10) Petitioner is mistaken about the significance of the fact that his qualifying conviction pre-dates both the Maryland and the federal retroactivity specifications, and Defense counsel cannot be faulted for not making this claim; and (11) Fourth Circuit authority indicates that the Interim Rule was proper and did not violate the A.P.A. [Crim. Doc. 78 at 8-38].

The Government also responded to Petitioner's Supplemental Motion by noting that: (1) Petitioner's Supplemental Motion is time-barred; (2) Petitioner's claims are inappropriate for a Motion under § 2255; and (3) Petitioner's reliance on *United States v. Acklin*, 557 Fed. Appx. 237 (4th Cir. 2014) (unreported) is misplaced [Crim. Doc. 120 at 3-5].

III. **An Overview of the Report and Recommendation:**

On August 13 and 14, 2015, Magistrate Judge Trumble entered the R&R [Civ. Doc. 20; Crim. Doc. 131], recommending that this Court deny Petitioner's § 2255 motion and dismiss the same with prejudice; deny Respondent's Motion to Reconsider and Dismiss; grant Respondent's Motion to Dismiss; and dismiss Petitioner's Motion to Compel as moot. The magistrate judge's report first noted that Marsh's motion was timely [Id. at 8-9]. The report then recommended that this Court should deny relief on Petitioner's ineffective assistance of counsel claims which arose before his guilty plea was entered, as those claims are barred by the collateral attack waiver contained within his plea agreement [Id. at 13-14]. The report then notes that because petitioner's waiver was knowing and intelligent, he is foreclosed from raising the very issues that he argues in the instant habeas corpus petition [Id.]. Next, the magistrate judge recommends that this Court should deny relief on Petitioner's individual ineffective assistance claims because they each fail as being illogical or premised upon an incorrect reading of a point of law [Id. at 14-32]. Those claims will be analyzed in turn where Petitioner objects to them.

A. **Clear Error Review**

Petitioner did not state objections to the recommendations of Magistrate Judge Trumble on Grounds Eight, Nine, Ten, Eleven, Twelve and Fourteen of his ineffective assistance of counsel claims, nor did he object to the Magistrate Judge's recommendations with regards to the claims advanced in his Supplemental Motion to Vacate. Having reviewed those recommendations for clear error, and finding none, this Court dismisses

these claims.

**B.  *De Novo* Review**

Petitioner objected to the recommendations of Magistrate Judge Trumble on as to the recommendations regarding his plea-bargained waiver of collateral attack (point D of objections).  Additionally, he objects to Grounds One (points C and E), Two (points E and second portion of F of objections), Three (first sentence of point F of objections), Five (also point D of objections), Six (point A of objections), and Seven (fourth sentence of Point F of objections) of the ineffective assistance of counsel claims raised in his initial motion. Accordingly, this Court conducted a *de novo* review of those grounds.

**C.  Petitioner's Notations Regarding the Federal Magistrates Act (FMA), Request for Change of Court, and Request for an Evidentiary Hearing**:

As a preliminary matter, Petitioner raises three new issues in his objections.  He first contends that the Magistrate Judge's Report and Recommendation violates F. R. Civ. P. 53(b); as such a report and recommendation is plainly permitted by the Local Rules of this Court and F. R. Crim. P. 59, Petitioner's argument is without merit.   Next, Petitioner requests a change of court, as this Court cannot purportedly, "be fair in any decision with respect to the Petitioner's claims" [Civ. Doc. 22; Crim Doc. 133].  For the reasons more fully stated in this Court's Order on Motion for Judicial Recusal and Motion for Leave to Appeal [Crim. Doc. 92], this Court denies the Petitioner's Request for Change of Court.

Finally, the Petitioner requests an evidentiary hearing where this Court "brings forth ALL (sic) evidence . . ." from his prior conviction for sodomy in Maryland state court.  § 2255 requires that the court hold a hearing on a motion under that section "unless the

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). Petitioner herein has adduced significant evidence in this case, and this Court feels that it is fully apprised of the facts underlying Petitioner's initial conviction, and no evidentiary hearing is required. Additionally, for the reasons stated more fully below, the motions, files, and records of this case conclusively show that the prisoner is entitled to no relief. Therefore, it is unnecessary for this Court to hold an evidentiary hearing pursuant to § 2255(b).

**IV.  Analysis as to the Remainder of Petitioner's § 2255 Claims:**

**A**.  **Standard of Review as to Petitioner's Waiver of Objections**:

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." ***Blackledge v. Allison***, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." ***Id***. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." ***United States v. Lemaster***, 403 F.3d 216, 220 (4th Cir. 2005).

Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" ***United States v. Attar***, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a

constitutionally impermissible factor. *Id.* at 732. Furthermore, the **Attar** court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. *Id.*

The Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. *Lemaster*, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." *Id.* at 220. The *Lemaster* court did not address whether the same exceptions that were noted by the *Attar* court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. *Id.* at 220 n.2; *see also* **United States v. Cannady**, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." **Braxton v. United States**, 358 F.Supp.2d 497, 502 (W.D. Va. 2005).[2] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. *Cannady*, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have

---

[2]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in **Braxton**. *See* **United States v. Braxton**, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." *Braxton*, 358 F.Supp.2d at 503.

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" *Attar*, 38 F.3d at 731 (quoting ***United States v. Davis***, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." ***United States v. Blick***, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." ***United States v. General***, 278 F.3d 389, 400 (4th Cir. 2002).

### i. Petitioner's Waiver Was Valid, Thereby Meaning that Petitioner's Claims of Ineffective Assistance of Counsel Which Occurred Before He Entered the Guilty Plea Are Hereby Dismissed:

As noted by the Magistrate Judge, Petitioner raises a number of claims of ineffective assistance of counsel which arose before the entry of his guilty plea on January 24, 2011. The Magistrate Judge's report also notes that Petitioner waived his right to collaterally attack this sentence, thereby foreclosing his right to raise ineffective assistance of counsel claims prior to his signing of the plea. For his part, Petitioner does not object to the Magistrate Judge's finding that his collateral attack waiver effectively forecloses the vast majority of this suit. Instead, Petitioner states that he was "coarcered (sic) into pleadeing

(sic) guilty to Failure to Register" [Civ. Doc. 22 at 3; Crim. Doc. 133 at 3]. However, Petitioner's claim that he was coerced into pleading guilty by his counsel goes against the strong weight of evidence presented in filings by both Respondent and Petitioner.

During his plea hearing, Petitioner testified that he completed two years of college and that he could read, write and understand the English language [Crim. Doc. 47 at 3-4]. He further testified that he had no hearing impairment or other disability that would prevent him from fully participating in the hearing and had not been treated for mental illness or addiction to narcotic drugs for at least the last ten years [Id. at 4]. In addition, Petitioner acknowledged that by pleading guilty, he was bound by the guilty plea even if the sentence ultimately imposed was longer than he hoped for or expected [Id. at 17]. Petitioner also testified that he reviewed the plea agreement in detail with his lawyer before he signed it [Id.]. Finally, and most importantly, Petitioner testified that he understood that he was giving up the right to file habeas corpus petitions attacking the legal validity of his guilty plea and the sentence [Id. at 11]. At the conclusion of the plea colloquy, Magistrate Judge Joel found that Petitioner was competent to make a plea, the guilty plea was freely and voluntarily made and Petitioner had full knowledge and understanding of the consequences of the plea [Id. at 27]. This was further confirmed by the affirmation of the Fourth Circuit Court of Appeals [Crim. Doc. 50 at 3].

After a careful review of the evidence, this Court finds that Petitioner was not coerced into signing the plea agreement, and his waiver of a right to file a motion pursuant to 28 U.S.C. § 2255 was knowing and intelligent. *See Attar*, 38 F.3d at 731. Because Petitioner knowingly and intelligently waived his right to collaterally attack his conviction and

sentence, he is foreclosed from raising claims of ineffective assistance of counsel that occurred prior to entry of his guilty plea. This includes Petitioner's claims as to Grounds One, Two, Three, Five, Six, and Seven of ineffective assistance of counsel. However, this Court will still analyze the portions of Petitioner's claims to which he objected on their merits.

### E.  Standard of Review as to the Ineffective Assistance of Counsel Claims:

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002).

15

Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, 466 U.S. at 688. To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297.

### 1. Ground One: Failure to Research and Investigate Underlying Charge of General Sodomy in Maryland

Petitioner asserts both in point E and under the "Request for Evidentiary Hearing" section of his objections that Counsel failed to research the underlying Maryland conviction that required Petitioner to register as a sex offender, and, that if Counsel had researched that conviction, Counsel should have moved the court to dismiss the charge because the Supreme Court's holding in *Lawrence v. Texas*, 539 U.S. 558 (2003), precludes Petitioner from having to register as a sex offender under S.O.R.N.A. [Civ. Doc. 22; Crim. Doc. 73 at 4-6]. Specifically, Petitioner claims that he does not qualify as a sex offender under S.O.R.N.A. because the factual circumstances surrounding that event indicate that he did

not commit forcible sodomy, thereby meaning that the Supreme Court's holding in *Lawrence* would retroactively apply to his state conviction of Sodomy General [Id. at 4-6].

However, Petitioner is mistaken in his reliance on *Lawrence*. In *Lawrence*, the Supreme Court invalidated a Texas state criminal statute which criminalized "deviant sexual intercourse" between members of the same sex. *Lawrence*, 539 U.S. at 563. The Court held that the Texas statute "further[ed] no legitimate state interest" to justify the State's intrusion into the private lives of two consenting adults. *Id.* at 578. The Court stated that the petitioners' rights to "liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government." *Id.* The Court made the distinction, though, that "[t]he present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not be easily refused." *Id.* Thus, *Lawrence* stands to protect *consenting* adults from the intrusion by the government into their personal and private lives.

Here, by contrast, Petitioner pled guilty to and was convicted under a Maryland sexual criminal statute [Crim. Docs. 1 at 4; 35 at 17-20; 84 at 2], which reads: "[a] person who is convicted of sodomy is guilty of a felony . . . ." Md. Code Ann., Crim. Law § 3-321 (West 2015). The Pre-Sentence Investigation Report indicates that Petitioner engaged in forcible anal intercourse with the victim, who was eighteen (18) years old, "mildly to moderately" mentally retarded, and legally blind [Crim. Doc. 35 at 17-20]. Further, the Pre-Sentence Investigation Report detailed other forcible sexual charges that were dropped in exchange for Petitioner's guilty plea [Id.]. Thus, the Texas statute and the Supreme Court's holding in *Lawrence* are easily distinguishable in this case. As such, Counsel's

performance fell well within the wide range of reasonable professional assistance, and did not require him to engage in a lengthy and likely fruitless search as to the background of Petitioner's underlying claim.

### 2. Ground Two and Ground Six: Failure to Investigate Non-Compliance with SORNA and Failure to Challenge the Government's Proof of Knowledge:

As his second claim for relief, Petitioner asserts that Counsel failed to research and investigate the charge against Petitioner for failing to register as a sex offender under S.O.R.N.A. [Civ. Doc. 5; Crim. Doc. 73 at 6]. Petitioner maintains that "[h]ad Counsel interviewed, taken statements and obtained records and documents from Petitioners' [sic] supervising authority, Counsel could have proved that Petitioner was in full compliance of Petitioners' [sic] registration requirements. . . ." [Id. at 6, 20]. Further, Petitioner contends that S.O.R.N.A. Rules and Regulations makes exceptions for a homeless offender and Counsel failed to research these guidelines [Civ. Doc. 1; Crim. Doc. 56-1 at 45, 47-48, 84]. Petitioner raises substantively the same claims in his objections at point C and in the Request for an Evidentiary Hearing section of the motion.

According to the 2008 National Guidelines for S.O.R.N.A. implemented by the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking ("S.M.A.R.T." Office), a sex offender must "provide . . . [t]he address of each residence at which the sex offender resides or will reside." 42 U.S.C. § 16914(a)(3). Further, "not later than 3 business days after each change of name, residence, employment, or student status" an offender must "appear in person" at an appropriate office to "inform that jurisdiction of all changes in the information required for that offender." 42 U.S.C. §

18

16913(c).  The registry requirements do not make special exemptions or rules for homeless offenders; rather, the statute defines "resides" as "the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13).  The federal cases interpreting "habitually lives" clearly demonstrate that, if an itinerant sex offender regularly returns to sleep, eat his meals and keep personal belongings in a localized area, he will be deemed to reside there for the purposes of his S.O.R.N.A. obligations. *See*, e.g., ***United States v. Voice***, 622 F.3d 870 (8th Cir. 2010); ***United States v. Bruffy***, 2010 WL 2640165 (E.D. Va. June 30, 2010) (in connection with a homeless defendant who stayed for an aggregate of 24 days in Alexandria, Virginia, finding that "a transient sex offender of ordinary intelligence...[understands] that a place where he stays on a regular basis for a period of multiple weeks when he has no other, more permanent place to call home is the place in which he 'resides.'") (unreported).

Petitioner acknowledges he was forced to leave the home of Mary Wynn in New Windsor, Maryland on or about August 17, 2010, due to a domestic violence protective order. [Civ. Doc. 1-1; Crim. Doc. 56-1 at 14, 17, 19].  He claims that he then became homeless and was going back and forth between Maryland and Falling Waters, West Virginia, where he was working on boats to earn money [Id. at 14, 17, 19, 43-45]. Petitioner maintains that he was homeless for sixty-five days until he was arrested on October 21, 2010 [Id. at 26, 81, 84].  However, during this time, electronic security records indicate that Petitioner stayed in River Bend Park in Falling Waters, West Virginia for a total of fifty-three (53) nights between August 17, 2010 and October 17, 2010 [Crim. Doc. 35 at 3; Crim. Doc. 78-1].  Further, a vehicle registered in Petitioner's name listed Falling Waters,

WV as his legal residence [Crim. Doc. 35 at 4]. Finally, several pieces of mail addressed to Petitioner listed a Falling Waters, WV post office box [Id.; Crim. Doc. 78 at 15; Crim. Doc. 84 at 17]. Based upon the totality of the circumstances and the evidence, Petitioner resided in Falling Waters, West Virginia, and counsel acted appropriately and reasonably when faced with this evidence.

Further, Petitioner's last recorded registration for the purposes of complying with S.O.R.N.A. was June 23, 2010; although, Sgt. Frazier did update Petitioner's record on August 30, 2010 to show that Petitioner was homeless [Crim. Doc. 56-7 at 2-3]. There is no indication that Petitioner updated his registration in person, nor any indication that Petitioner registered his West Virginia residence [Crim. Doc. 56-7 at 3]. During this time, Petitioner contends he fulfilled his obligations because he remained in contact with Sgt. Frazier and called Sgt. Mahood of the West Virginia State Police [Crim. Doc. 56-1 at 17-18, 29-30, 43-46]. This contact was not sufficient to satisfy the requirements under S.O.R.N.A., which stipulates that the offender must update his registration in person. 42 U.S.C. § 16913(c). Based on this evidence, it is clear that Counsel's performance fell well within the wide range of reasonable professional assistance. Counsel reasonably may have concluded that the evidence presented by the Government weighed heavily against his client, and that procuring a plea agreement was the best and most reasonable course of action.

### 3. Grounds Three and Seven: Failure to Object to Inaccuracies in the PSR and Failure to Argue Against Tier III Offender Status:

In the point F of Petitioner's objections, he objects to the R&R regarding counsel's

alleged failure to object to his Tier III sentencing structure. However, on May 9, 2011, when Petitioner appeared before this Court for sentencing, the transcript of sentencing proceedings reflects that Counsel engaged in a lengthy and well-reasoned objection as to Petitioner's sentencing tier [Crim. Doc. 48 at 4]. While this Court overruled those objections, this Court finds that they were well-reasoned and properly contended before this Court. Therefore, Counsel satisfied both of the requisite prongs of *Strickland*. As such, given the weight of evidence contrary to Petitioner's claim, this Court overrules Petitioner's objection that counsel failed to object to alleged inaccuracies in the PSR and against Petitioner's Tier III offender status.

### 4. Ground Five: Counsel's Poor Advice as to the Plea Agreement:

As his fourth claim, Petitioner contends that, upon the advice of Counsel, he "unknowingly and against his interest, signed a superceding [sic] plea agreement." Petitioner contends that this agreement "re-classified him as other than a Tier III sex offender" [Civ. Doc. 5; Crim. Doc. 73 at 20]. Further, Petitioner believes that he does not qualify as a sex offender under "Constitutional law, Statutory law, and Case law" [Id.]. In his objections, Petitioner escalates his claim, and contends that he was coerced into signing his plea agreement. However, as noted above, the evidence in this case clearly indicates that Marsh knowingly and voluntarily accepted the Government's plea agreement [Crim. Doc. 47 at 11]. This was further confirmed by the affirmation of the Fourth Circuit Court of Appeals [Crim. Doc. 50 at 3]. As such, Petitioner's claims and objections to this effect are without merit and are hereby overruled.

## V. Conclusion

Upon careful review of the record and for the reasons stated more fully above, this Court hereby **ADOPTS** Magistrate Judge Trumble's Report and Recommendation **[Civ. Doc. 20; Crim. Doc. 131]** and Petitioner's Objections **[Civ. Doc. 22; Crim. Doc. 133]** are hereby **OVERRULED**. As such, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody **[Civ. Doc. 1 and 5; Crim. Docs. 56, 73, and 108]** is hereby **DENIED** and **DISMISSED WITH PREJUDICE**. Additionally, Respondent's Motion to Dismiss **[Crim. Doc. 67]** is **GRANTED**; Petitioner's Motion to Compel **[Crim. Doc. 120]** is **DISMISSED AS MOOT**; and Respondent's Motion for Reconsideration **[Crim. Doc. 129]** is **DENIED**. Accordingly, this matter is **ORDERED STRICKEN** from the active docket of this Court. The Clerk is **DIRECTED** to enter separate judgment in favor of the United States.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** Petitioner a certificate of appealability on the dismissed claims, finding that he has not made "a substantial showing of the denial of a constitutional right" on those claims. 28 U.S.C. § 2253(c)(2). Therefore, this Court **DENIES** Petitioner leave to present these theories to the appellate Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the pro se Petitioner.

**DATED:** September 17, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE